UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Case No.:  1:20-CV-23414-DPG

ROBERTO TORRES and
MYRIAM TORRES,

    Plaintiffs,

vs.

LIBERTY MUTUAL FIRE
INSURANCE COMPANY and
C & D PLUMBING,

    Defendants.
_____/

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO MOTION TO REMAND

Plaintiffs, ROBERTO and MYRIAM TORRES ("Torres"), pursuant to Title 28 U.S.C. § 1447(c), hereby files this Reply to Defendant's Response to the Motion to Remand (D.E. 13):

## MEMORANDUM OF LAW IN REBUTTAL

I. <u>To establish diversity jurisdiction, Liberty's burden is to show that the claims against it have no real connection to the claims against C&D plumbing, not that the claims are misjoined.</u>

Mr. and Mrs. Torres must, again, object to Liberty's mischaracterization of the legal standard that applies here. Liberty cannot satisfy its obligation to show complete diversity merely by convincing this Court that "C&D Plumbing, Inc. is misjoined." (D.E. 1, at ¶11). Instead, Liberty must shoulder a heavier burden: to show that "the claim against the diverse defendant has no **real connection** to the claim against the nondiverse defendant." <u>Triggs v. John Crump Toyota, Inc.</u>, 154 F.3d 1284, 1287 (11th Cir. 1998) (emphasis supplied).  Although a Rule 20 analysis may

inform the Court's inquiry at the margins, "**real connection**" is a different standard entirely. Liberty's authority recognizes this point in places, but Liberty itself does not. Compare (D.E. 13, at 3-4 (citing cases)) with M.W. v. Ford Motor Co., 8:14-CV-3132-T-24TBM, 2015 WL 1311029, at *5 (M.D. Fla. Mar. 24, 2015) (denying motion to remand where joinder "rises beyond the level of 'mere misjoinder'" and "Plaintiffs have proffered no legitimate justification for the joinder" of the non-diverse defendants); Stone v. Zimmer, Inc., 09-80252-CIV, 2009 WL 1809990, at *2 (S.D. Fla. June 25, 2009) (acknowledging that "'mere misjoinder' does not constitute 'fraudulent misjoinder'"); Williams v. Zimmer Holdings, Inc., 5:05-CV-257-OC-10GRJ, 2005 WL 8159804, at *5 (M.D. Fla. Dec. 28, 2005) ("Plaintiff has not alleged (nor could he allege) a 'real connection'").

Liberty confuses matters further by casting its response as a motion to sever. Unless and until Liberty establishes subject matter jurisdiction, the Court cannot hear any motion to sever. 2600 Island Boulevard Condo. Ass'n, Inc. v. Great Am. Ins. Co. of New York, 11-23132-CIV, 2011 WL 13224080, at *4 (S.D. Fla. Nov. 29, 2011) ("Rule 20 has no application in this case as that Rule was not used to join the Defendants and the parties before this Court are the same parties that have always been a part of the State court action."). There is no need to undertake a full Rule 21 analysis at this early stage, because Liberty must first carry its jurisdictional burden to show it has no **real connection** with C&D in this suit. Accordingly, Mr. and Ms. Torres have also filed a motion to extend the time to respond to Liberty's motion to sever, should a response be necessary.

This is not to say that the claims are improperly joined. Indeed, they are inextricably intertwined. However, the motion to remand adequately addresses the Rule 20 standard. Here, Mr. and Mrs. Torres wish to emphasize the **real connection** standard, which is more than satisfied by the following allegations in the complaint:

- That Liberty hired C&D as its representative and adjuster to investigate Plaintiffs' claim (D.E. 1-2, at ¶ 19) and "determine the cause of Plaintiffs' plumbing loss and damages, which the Plumber attempted by inserting a camera into Plaintiffs' plumbing system" (Id. at ¶ 66);

- That in the course of its actions on Liberty's behalf, C&D's "double jetting of the sewer lines caused the sewage backups in Plaintiffs' home to become worse and caused further damages to Plaintiffs' home" (Id. at ¶ 19; see also ¶ 39 (claiming benefits due from "from a broken plumbing system, and ensuing damages therefrom");

- That C&D admitted that the "the jetting exacerbated the condition of the Plaintiffs' plumbing system: 'During our jetting pieces of the pipe were getting inside the line due to the condition of the sewer lines underneath the house" (Id. at ¶¶ 20, 70);

- That C&D breached its duty to prevent "a further exacerbation of the damages . . . by [C&D]'s double jetting of the sewer lines and caus[ing] the sewage backups in Plaintiffs' home to become worse (Id. at ¶¶ 71-72);

- That to repair the damage, C&D proposed to tunnel under the house, which was impossible due to the solid coral rock underneath the home (Id. at ¶ 22); and,

- That Liberty nevertheless based its estimate on tunneling instead of trenching, underpaying the claim based on C&D's inappropriate advice (Id. at ¶ 22).

II. <u>Liberty fails to show that Plaintiffs' claims against it have "no real connection" to the claim against its plumber, C&D.</u>

To appreciate the legal weaknesses in Liberty's argument, the Court need only view the problem through the correct legal standard. Unlike the Defendant, the Court must ask whether there is **no real connection** between the claims against Liberty and against its hired plumber C&D,

3

who further damaged the Torres residence while investigating and adjusting the loss on Liberty's behalf.  Liberty cannot carry its heavy burden.

Specifically, Liberty is linked to C&D's negligence by C&D's self-professed status as Liberty's representative.  C&D Plumbing, in its own words, "was hired by Liberty Mutual as its representative and adjuster to investigate Plaintiffs' claims [sic] to perform plumbing services to their home." (D.E. 12, Ex. A, at ¶ 4).  Liberty is a but-for cause of C&D's presence in the Torres residence.  C&D, in turn, factors heavily into the process by which Liberty set the benefits it was willing to pay, which is relevant to whether Liberty ever intended to pay benefits as promised in the contract. Mejia v. Jurich, 781 So. 2d 1175, 1177–78 (Fla. 3d DCA 2001) (explaining that "if the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform, such a promise may also constitute a fraudulent misrepresentation."). Similarly, whether C&D miscalculated in its recommendations and estimates features prominently in whether and to what extent Liberty breached the insurance policy by underpaying the claim.  Liberty cites to no case denying a motion to remand under similar circumstances.

Liberty writes that "Liberty Mutual is not a plumber and the claims against Liberty Mutual have nothing to do with the care owed when performing plumbing services." (D.E. 13, at 5).  But there is no requirement that the same duty of care apply to every claim against defendants.  2600 Island Boulevard Condo. Ass'n, Inc. v. Great Am. Ins. Co. of New York, 11-23132-CIV, 2011 WL 13224080, at *3 (S.D. Fla. Nov. 29, 2011) (granting motion to remand where plaintiff alleged bad faith claim against insurer and negligence against non-diverse water remediator); see also Squire v. GEICO Gen. Ins. Co., 12-23315-CIV, 2012 WL 12864938, at *2 (S.D. Fla. Nov. 2, 2012) (remanding where plaintiff alleged bad faith and legal malpractice). Similarly, no authority

requires that every claim sound in either tort or contract.  Liberty's breach of contract and C&D's negligence arise from the same water loss, which is a sufficiently **real connection** to warrant remand.  2600 Island Boulevard Condo. Ass'n, 2011 WL 13224080, at *4 (explaining that mitigation company's negligence and insurance company's bad faith arose from same loss event; "there is no basis to describe their joinder as 'bordering on a sham.'"); see also Headwaters, LLC ex rel. Head v. Dawes Lake, LLC, CIV.A. 13-0291-CG-N, 2013 WL 4519198, at *6 (S.D. Ala. Aug. 26, 2013) (remanding; "Because the claims against both defendants arise from common operative facts, those claims are logically related" and therefore egregiously misjoined).

Liberty cites to a case on "alternative liability" (Id. at 6-7) but completely fails to address several liability, which applies if Liberty and C&D are each proportionally responsible for the damages to the Torres residence.  Liberty also argues that C&D's negligence did not create an "ensuing loss" for which Liberty can be liable.  (D.E. 14, at 7).  According to Liberty, Mr. and Mrs. Torres were obligated to make a second claim on their insurance and allege a separate breach. Liberty cites no authority for the proposition that C&D's negligence must be treated as a second loss, with a second claim, and the **real connection** test does not require this Court to engage in such legal gymnastics.  Liberty cannot carry its burden to show a complete lack of connection to the claims against its representative and adjuster C&D.

III.   Liberty's authority does not support its position.

Mr. and Mrs. Torres also wish to address the cases Liberty cites.

First, Liberty offers Judge Cudahy's very pithy quote that a plaintiff should not be able to "defeat diversity jurisdiction by joining his grandmother as a defendant – surely *some* set of facts might make her liable." (D.E. 13, at 7-8) (quoting Poulos v. Naas Foods, Inc., 959 F.2d 69, 74 (7th Cir. 1992))).  This rhetorical flourish should not disguise the fact that the Poulos is not a

5

fraudulent misjoinder case. Instead, the Poulos appellant lost because the substantive claim against the non-diverse defendant "simply ha[d] no chance of success." Poulos, 959 F.2d at 73. Here, Mr. and Ms. Torres clearly stated a claim against C&D, and Liberty does not argue otherwise in the notice of removal.

Liberty's other authority, an unpublished district court case from the Northern District of Florida, is not on point either. (D.E. 13, at 8 (citing Anderson v. State Farm Mut. Auto. Ins. Co., 4:08CV345-RH/WCS, 2008 WL 11366408, at *2 (N.D. Fla. Nov. 10, 2008))). In Anderson, the plaintiff sued State Farm for bad faith refusal to settle, and also sued his insurance agent "for failure to advise him to obtain a higher limit." Id. at *1. Here, C&D caused property damage while investigating the loss on Liberty's behalf. C&D's negligent actions are casually related to Liberty's ultimate liability. If the insurance agent in Anderson had also caused further property damage or bodily harm, would the outcome have been the same?

Next, Liberty cites a series of unpublished district court orders for the proposition "that a claim against a tortfeasor does not share common questions of fact or law with an insurer, even if the tortfeasor's actions caused or contributed to the claimed loss." (D.E. 13, at 5-6, 8). The cases cited are not relevant here because they all lack the element of an insured's representative causing further property damage and then participating in the process of adjusting and estimating the loss:

- Madison Materials, 2004 WL 7330498, involved claims of breach of contract and bad faith against the insurer, and theft, embezzlement, and conversion against the non-diverse defendant. The insurer had no role in creating the covered damages. Here, the diverse party Liberty sent its representative to investigate and adjust the loss; in the process, the non-diverse representative (C&D) made the loss worse.

- Tri-Miss Services, 2012 WL 5611058, involved claims of fraud and embezzlement

6

against non-diverse former employees, and breach of contract and bad faith against the diverse insurance companies. The insurance claim was denied completely for one reason: "Plaintiff's failure to provide notice of the loss within sixty days of its discovery" that its employees were stealing. (Id. at 3). Here, where C&D acted as investigator and adjuster on Liberty's behalf, C&D's conclusions about the amount of loss are at the heart of Mr. and Mrs. Torres's underpayment claim.

- Similarly, in Chaudhri, 2018 WL 4571603, the insurer raised the defense that the plaintiffs had failed to discharge their post-loss duties to provide documents and submit to examinations under oath. Those issues were insufficiently related to the insured's claims against the tortfeasors who caused the underlying loss – theft and damage to the insured's storefront. Moreover, Chaudhri was not a removal case, so the standard was Rule 20, not real connection.

- Deforneaux, 2006 WL 2524165, is not a removal case either, so offers no insight into applying the real connection test. It involves a post-Irma claim against Jefferson Parrish for negligent levee and maintenance, alongside a typical breach of homeowners' policy claim. In Deforneaux, unlike here, the insurance company and its representatives had no role in creating or exacerbating the loss.

As for the single published district court case Liberty cites on page 8, Todd v. Cary's Lake Homeowners Association is not even from a **real connection** jurisdiction! 315 F.R.D. 453 (D.S.C. 2016).[1] Unlike the Todd court, this Court is bound to apply Tapscott v. MS Dealer Serv. Corp., 77

---

[1] "In the Fourth Circuit, a number of district courts have explicitly adopted the doctrine, while at least one has declined to do so absent explicit direction from the Fourth Circuit." In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Products Liab. Litig., 2:14-MN-02502-RMG, 2016 WL 7339811, at *3 (D.S.C. Oct. 24, 2016).

F.3d 1353, 1355 (11th Cir. 1996), and its progeny. At any rate, the Todd court faced two more logically separate groups of claims than this Court does.  In Todd, the non-diverse tortfeasors were sued for negligence, strict liability, and nuisance after dams broke and flooded her home.  The diverse insurer was sued for breach of contract and bad faith for failing to pay benefits.  Here, Liberty and C&D are connected by C&D's actions as Liberty's representative and adjuster.

Finally, Liberty cites to a series of inapposite cases to make an argument impermissibly raised for the first time:  that Plaintiff fails to state a claim against C&D.  *Compare* (D.E. 13, at 9 ("Florida does not recognize a claim against a person or entity retained to adjust a claim") *with* (D.E. 1, at ¶ 11 (arguing that removal jurisdiction exists only because the claims are improperly joined, without reference to any other fraudulent joinder doctrine); *see* Chiari v. Wal-Mart Stores, E., LP, 17-61352-CIV, 2018 WL 4409985, at *4 (S.D. Fla. June 29, 2018) (clarifying that a removing defendant cannot "assert additional grounds of jurisdiction missing from the original pleading").  These cases all cite to King v. Nat'l Sec. Fire & Cas. Co., 656 So. 2d 1338, 1339 (Fla. 4th DCA 1995).  In King, the Fourth District held there is no cause of action against an adjuster for negligent adjusting; the plaintiff's cause of action is against the insurer, for breach of contract, rather than "a cause of action by an insured against an independent adjuster in simple negligence." Id. at 1339.

Like King, all of Liberty's unpublished authority features this kind of negligent adjusting theory.  In Whitney v. Esurance Ins. Co., 13-61329-CIV, 2013 WL 4028151, at *1 (S.D. Fla. Aug. 7, 2013), the plaintiff sued the adjuster personally for "negligent misrepresentations to her regarding the investigation, handling, and settlement" of the claim.  Similar claims of negligent adjustment were rejected each of Liberty's cases:  Tolz v. GEICO Gen. Ins. Co., 08-80663-CIV, 2009 WL 10667547, at *3 (S.D. Fla. July 16, 2009); Oriole Gardens Condominiums, III v. Indep.

8

Cas. & Sur. Co., 11-60294-CIV, 2011 WL 13217271, at *4 (S.D. Fla. May 18, 2011); Indian Creek Club & Marina Condo. Ass'n, Inc. v. QBE Ins. Corp., 11-20579-CIV, 2011 WL 13223507, at *4 (S.D. Fla. Aug. 18, 2011); and, Fisher v. Geico Indem. Co., 12-23851-CIV, 2013 WL 12091096, at *4 (S.D. Fla. July 23, 2013). Mr. and Mrs. Torres are suing C&D for property damage. The "negligent adjustment" theory line of cases is irrelevant.

## CONCLUSION

To be clear, Mr. and Ms. Torres completely disagree that even simple misjoinder is present under Rule 20 here. They have made their arguments in the motion to remand, and will not restate them here. Instead, the purpose of this reply is to remind the Court of a principle Liberty does not squarely acknowledge: that simple Rule 20 misjoinder, even if shown, would not satisfy Liberty's burden to establish diversity jurisdiction.

It is Liberty who faces the heavy burden of showing the absence of any real connection between their claims against Liberty and C&D, by clear and convincing evidence. Mr. and Mrs. Torres face a low hurdle here: the **real connection** standard. They also have the benefit of every inference.

Liberty never comes close to establishing fraudulent misjoinder. As for fraudulent joinder, an argument it did not properly raise in the notice of removal, Liberty cites no authority pertinent to the claims actually raised against C&D, a separate and separately represented defendant who is not being sued for "negligent adjustment." Accordingly, Mr. and Mrs. Torres ask the Court to remand this case back to Florida's circuit court, where it belongs.

and is authorized to represent it objects to the relief requested.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of was filed with the Clerk of this Court via the CM/ECF filing and that a copy has been sent via electronic mail this 7th day of October, 2020

to: Matthew J. Lavisky, Esq., mlavisky@butler.legal, Jamie Combee Novaes, Esq., jnovaes@butler.legal, Butler, Weihmuller, Katz, Craig, LLP, Attorneys for Defendant, Liberty Mutual Fire Insurance Company, 400 N. Ashley Drive, Suite 2300, Tampa, FL  33602 and Sanford R. Topkin, Esq., stopkin@topkinlaw.com, chansen@topkinlaw.com, Topkin & Partlow, PL, Attorneys for Defendant, C&D Plumbing, Inc., 1166 W. Newport Center Drive, Suite 309, Deerfield Beach, FL  33442.

    KRAMER, GREEN, ZUCKERMAN,
    GREENE & BUCHSBAUM, P.A.
    Co-Counsel for Plaintiffs
    4000 Hollywood Blvd., Suite 485-S
    Hollywood, FL  33021
    954-966-2112 – phone
    954-981-1605 – fax

    By:   /s/ Craig M. Greene, Esq.
        CRAIG M. GREENE, ESQ.
        Florida Bar No. 618421
        cgreene@kramergreen.com
        GRAY PROCTOR, ESQ.
        Florida Bar No. 48192
        gproctor@kramergreen.com

    And

    Mark J. Mintz, Esq.
    Co-Counsel for Plaintiff
    Mintz Truppman, P.A.
    1700 Sans Souci Boulevard
    North Miami, FL  33181
    mintz@mintztruppman.com